**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| PAMELA LOVE,<br><br>Plaintiff,<br><br>vs.<br><br>COSTCO WHOLESALE CORPORATION and MARCY REDICK,<br><br>Defendants. | ) | No. 2:25-cv-13693-DCN<br><br>**ORDER** |

This matter is before the court on plaintiff Pamela Love's ("Love") motion to remand, ECF No. 8. For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

This negligence action arises from a slip and fall at a Costco store in Mount Pleasant, South Carolina. ECF No. 1-1, Compl. ¶¶ 3, 6–7. Love alleges she "slipped on a slippery substance located on the floor" of the Costco, leaving her with "severe injuries[.]" Id. ¶¶ 7–8. Defendants are Costco Wholesale Corporation ("Costco") and Marcy Redick ("Redick") (together, the "Defendants"), the manager of the Costco store at the time of the slip and fall. Id. ¶¶ 2–3.

Love initially brought suit in the Charleston County Court of Common Pleas on January 10, 2025, naming Costco, Costco Whole Membership, Inc. ("Costco Wholesale Membership"), and Joseph Fread ("Fread") (collectively, the "Initial Defendants") as defendants. Case No. 2:25-cv-01292-DCN, ECF No. 1-1, Compl. ¶¶ 2–3.[1] The Initial

[1] Because this is the second time this suit has been removed from state court, two dockets exist for this case in the court's case management system. Unless otherwise

Defendants removed the suit to this court and claimed diversity jurisdiction despite Fread and Love both being citizens of South Carolina. Case No. 2:25-cv-01292-DCN, ECF No. 1 ¶¶ 4, 6. Love moved to remand on April 4, 2025, Case No. 2:25-cv-01292-DCN, ECF No. 8, and the Initial Defendants opposed the motion, arguing Fread was fraudulently joined as a party solely to thwart federal jurisdiction, Case No. 2:25-cv-01292-DCN, ECF No. 12 at 1. The court determined a factual dispute existed as to whether Fread was the manager of the Costco store where the slip and fall occurred. Case No. 2:25-cv-01292-DCN, ECF No. 17 at 9. After resolving this factual dispute in Love's favor, the court found it was possible for Love to maintain a negligence action against Fread in state court and granted the first motion to remand on this basis. Id. at 10–11.

After remand, Costco informed Love through discovery responses that Redick, and not Fread, was the manager of the store where the accident occurred. ECF Nos. 8 at 4, 8-15 at 1. Love then filed an amended complaint on November 20, 2025, removing Fread as a defendant and naming Redick in his place.[2] ECF No. 1-1, Amend. Compl.; ECF No. 8 at 5. On December 3, 2025, Defendants again removed this suit, asserting diversity jurisdiction. ECF No. 1 ¶¶ 4–5. The notice of removal stated that Redick was "a citizen of the state of North Carolina[,]" unlike Fread, who was a citizen of South Carolina. Compare id. ¶ 4, with Case No. 2:25-cv-01292-DCN, ECF No. 1 ¶ 4. Shortly

---

indicated, citations in this order pertain to Case No. 2:25-cv-13693-DCN, which is the docket on which the instant motion was filed.

[2] The amended complaint inadvertently retained Costco Wholesale Membership as a defendant. ECF No. 8 at 4. Costco Wholesale Membership and Love stipulated to Costo Wholesale Membership's dismissal from the suit without prejudice on December 17, 2025. ECF No. 6.

thereafter, Love learned that Redick had sold her Mount Pleasant home on August 18, 2025, and purchased a new home in Charlotte, North Carolina two days later. ECF Nos. 8 at 3, 8-11, 8-12. Given the timing of Redick's move to North Carolina, Love suspected foul play and again moved to remand on December 23, 2025. ECF No. 8. Defendants responded in opposition on January 6, 2026, ECF No. 9, and Love replied on January 6, 2026, ECF No. 10. The court held a hearing on the motion on June 17, 2026. ECF No. 16. As such, the motion is fully briefed and now ripe for the court's review.

## II. STANDARD

Once a case becomes removable, "a party may waive its 'right to removal by demonstrating a clear and unequivocal intent to remain in state court.'" Northrop Grumman Techn. Servs. Inc. v. DynCorp. Int'l LLC, 865 F.3d 181, 186 (4th Cir. 2017) (quoting Grubb v. Donegal Mut. Ins. Co., 935 F.2d 57, 59 (4th Cir. 1991)). "A defendant demonstrates this intent by engaging in 'substantial defensive action' in state court before filing a notice of removal." Northrop Grumman Techn. Servs. Inc., 865 F.3d at 186 (quoting Aqualon Co. v. Mac Equip., Inc., 149 F.3d 262, 264 (4th Cir. 1998), abrogated in part on other grounds by Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 572 (2004)). A finding of waiver "is appropriate only in 'extreme situations,' when judicial economy, fairness, and comity demand it." Northrop Grumman Techn. Servs. Inc., 865 F.3d at 186 (quoting Grubb, 935 F.3d at 59). The district court's waiver determination "involves a factual and objective inquiry as to the defendant's intent to waive." Redman v. Javitch Block, LLC, 2022 WL 17716772, at *2 (4th Cir. Dec. 15, 2022) (quoting Grubb, 935 F.2d at 59).

## III. DISCUSSION[3]

Love seeks an order remanding this case to state court, arguing Defendants intentionally withheld Redick's identity until after she moved to North Carolina and have, therefore, waived their right to remove by engaging in jurisdictional "gamesmanship" to create the "very facts on which their most recent Notice of Removal is predicated[.]" ECF No. 8 at 5. Love's most serious allegation is that Defendants "intentionally delayed responding to discovery until after Marcy Redick moved to North Carolina." Id. at 8 (cleaned up). For this allegation to be credible, Love must establish (a) that Defendants knew of Redick's identity prior August 20, 2025 (the day Redick moved to North Carolina), and (b) that Defendants also knew that Redick would be moving to North Carolina prior to the date on which she moved. The court will first address the conduct that Love claims to be indicative of Defendants' purported gamesmanship. Next, the court considers whether it has jurisdiction over the instant suit. Finally, the court turns to the primary legal issue before it—whether Defendants have waived their right remove this suit.

### A. Events Leading Up to Second Removal

#### 1. Discovery Served with Initial Complaint

The complaint was served on Defendants in February of 2025. ECF Nos. 8 at 2, 8-3, 8-4. Love claims that discovery requests "seeking identification of all potential parties, including all employees and managers of the Costco store at issue[ ]" were served

[3] Throughout the course of this litigation, multiple defendants have been added and removed as parties. For simplicity, the court uses the term "Defendants" in the discussion that follows even though some of the events described below took place prior to Redick's addition to this suit.

with the complaint. ECF No. 8 at 2. Love cites to "ECF No. 5-3 ¶ 2" in support of this assertion, but "ECF No. 5-3" is a non-existent docket entry on the current docket while ECF No. 5-3 in the prior case (Case No. 2:25-cv-01292-DCN) contains copies of the initial summons and complaint but no corresponding discovery requests. See ECF No. 5; Case No. 2:25-cv-01292-DCN, ECF No. 5-3. According to defense counsel, he was first notified that discovery had, "apparently," been served with the complaint by an email from Love's counsel on June 30, 2025, shortly after the court remanded the case to state court.[4] ECF Nos. 8-13 at 3, 9 at 3. In the email, Love's counsel stated, "just as a courtesy reminder, we served discovery requests along with our summons and complaint. I just wanted to make sure that y'all had received those requests. We can send Word versions to you, if necessary." ECF No. 8-13 at 3.

Given the equivocal nature of this "courtesy reminder" and Love's miscitation of the record, the court requested at the motion hearing that Love's counsel provide documentation demonstrating that discovery had been served with the complaint. Shortly after the hearing, Love's counsel emailed the court an affidavit of service for Fread indicating that discovery requests were included in the documents initially served on him. But, even assuming defense counsel received this discovery when Fread was served, both parties agree that discovery was on hold pending resolution of the first to motion remand. See Fed. R. Civ. P. 26(f). Once the court remanded the case on June 13, 2025, the emails between counsel demonstrate that they were prepared to move forward with discovery in state court. See ECF No. 8-13. Defendants then responded to the discovery—which

[4] Defendants add that any state court discovery was "on hold pending resolution of the [first] motion to remand and/or the 26(f) conference." Id. at 3 n.2.

provided Redick's identity but not her citizenship—on October 29, 2025. ECF Nos. 8 at 10, 8-15 at 1. While Love understandably laments this timing, the fact that Defendants waited three months to furnish responses to this discovery does not establish that defense counsel knew of Redick's identity prior to August 20, 2025, much less that defense counsel knew Redick would be moving to North Carolina and withheld her identity to manufacture complete diversity between parties. Indeed, the fact that defense counsel provided responses long after August 20, 2025—as opposed to shortly after that date—suggests that defense counsel was unaware of Redick's plans to move to North Carolina on that date. As such, defense counsel's delay in responding to the discovery served with the complaint does not support a finding that Defendants intended to "manipulate jurisdictional facts." See ECF No. 8 at 10.

**2. Defendants' Failure to Respond to Love's Email**

On February 6, 2025, defense counsel sent an email to Love's counsel stating Fread was not the manager at the relevant Costco location. ECF Nos. 8 at 2, 8-6. Love's counsel responded that same day, requesting that defense counsel disclose the identity of the proper general manager so that Love could amend her complaint accordingly. ECF No. 8 at 2–3, 8-7. Love's counsel asserts that defense counsel did not respond to this email, and Defendants do not dispute this assertion. See id. at 3; ECF No. 9. To be sure, defense counsel should have more promptly responded to this email either providing the identity of the proper store manager or indicating that the identity of the proper store manager was not yet known. Nonetheless, the lack of response does not establish that defense counsel knew of Redick's identity at that time and intentionally withheld it, nor does it establish that defense counsel knew Redick would be moving to North Carolina in

a few months and withheld her identity to manufacture diversity of citizenship between the parties. This lack of response represents an oversight on defense counsel's part, but it does not establish foul play.

Defense counsel argued at the motion hearing that Defendants have only sought to litigate this action in good faith. See ECF No. 16. As evidence of their good faith, she noted that Love's counsel emailed the court admitting to have "mistakenly missed . . . emails[ ]" notifying him of Defendants' motion to dismiss, filed shortly after Defendants first removed this suit. See ECF Nos. 9-1 at 3, 16. Love's counsel requested that the court extend the deadline even though it had already passed, but court intervention was not necessary because defense counsel had consented to an extension of the deadline. Id. at 2–3. Granting an extension of time to respond to a dispositive motion—after the deadline had already passed—is not the courtesy expected from defendants who, in Love's own words, "flagrantly disregard[ ]" the "rules of civil procedure" and harbor "clear intentions to manipulate jurisdictional facts[ ] to "override the right of the Plaintiff and spirit of the Court." See ECF No. 8 at 10, 12; see also Local Civ. Rule 7.06 (D.S.C.) (cautioning that when "no memorandum in opposition is filed within fourteen (14) days of the date of service, the court will decide the matter on the record and such oral argument as the movant may be permitted to offer, if any."). As such, Defendants' extension of this deadline weighs against a finding of jurisdictional manipulation on their part.

**3. Defendants' Initial Disclosures**

Love asserts that Defendants' initial disclosures after each removal affirmatively demonstrate that they "knew the correct identity of the manager of the Store[ ] . . . [y]et

refused to disclose her identity." ECF No. 8 at 7. Love first points the court to Defendants' responses to interrogatories (F) and (G) from their initial disclosures after the first removal:

> (F) [Defendants only.] If the defendant is improperly identified, give the proper identification and state whether counsel will accept service of an amended summons and pleading reflecting the correct identification.
>
> **ANSWER**: The Defendant Costco Wholesale Corporation is properly identified. The Defendants Costco Wholesale Membership, Inc. and Joseph Fread are not owners, operators and/or managers of the property at issue in this premises liability case. Further, these Defendants do not have sufficient control of the premises so as to impose a duty of care to the Plaintiff and have filed a Motion to Dismiss with respect to these issues, as both Defendants Costco Wholesale Membership, Inc. and Joseph Fread are entitled to judgment as a matter of law on all claims against them.
>
> (G) [Defendants only] If you contend that some other person or legal entity is, in whole or in part, liable to you or the party asserting a claim against you in this matter, identify such person or entity and describe the basis of said liability.
>
> **ANSWER**: At this early stage, no such parties are known.

Case No. 2:25-cv-01292-DCN, ECF No. 3 at 2–3; see ECF No. 8 at 7–8. Love then observes that Defendants' response to interrogatory (F) in their second set of initial disclosures (those filed after the second notice of removal) states that "Marcy Redick [is] properly identified[ ]" as a defendant. ECF No. 3 at 3; see ECF No. 8 at 8. This response, Love contends, shows that "Defendants knew that Interrogatory F applies to all parties and not just Costco." ECF No. 8 at 8. The court is unable to follow this reasoning. Interrogatory (F) asks whether "the Defendant is improperly identified[,]" and, in each response, Defendants provide an answer that is responsive as to all defendants named at the time the response was given. Compare ECF No. 3 at 3, with Case No. 2:25-cv-01292-DCN, ECF No. 3 at 2–3. Defendants' differing responses

simply reflect the reality of which persons and entities were defendants at the time the responses were given. As such, the court does not find that these responses show that "Defendants intentionally omitted Marcy Redick in their initial disclosures[,]" as Love asserts. ECF No. 8 at 7.

**4. Disclosure of Redick's Identity and Second Removal**

The court granted the motion to remand June 13, 2025, finding there was at least a "glimmer of hope" that Love could maintain a claim against Fread in state court. Case No. 2:25-cv-01292-DCN, ECF No. 17 at 9–10. Then, according to Love, Redick listed her home in Mount Pleasant, South Carolina for sale on June 25, 2025. ECF No. 8 at 3. Love contends that Redick's home sold on August 18, 2025, and she purchased a new residence in Charlotte, North Carolina on August 20, 2025. Id. Defendants provided discovery responses on October 29, 2025, indicating that Redick was the store manager of the Costco where the incident occurred—long after Redick had relocated to North Carolina on August 18, 2025. Love then contends that "[u]pon learning of Marcy Redick's identity," she "promptly" moved to amend her complaint on November 20, 2025—nearly three weeks after learning of Redick's identity on October 29, 2025. See ECF No. 8 at 4; Amend. Compl.

Defendants explain that "[f]ollowing this filing, and upon learning and confirming that . . . Redick is a North Carolina resident, the Defendants properly removed the case to this Court [again] on December 3, 2025, well within thirty days following receipt of the amended pleading." ECF No. 9 at 3. Defendants further note that "[a]t no point in any of these post-remand communications . . . did the Plaintiff ask about the identity of the

Mount Pleasant Costco warehouse manager at the time of the incident and/or confirmation of whether she was a citizen or resident of South Carolina." Id.

Notably, when Defendants first provided Love with Redick's identity in response to discovery requests on October 29, 2025, the response only stated Redick's name and position. ECF No. 8-15 at 1. The interrogatory did not seek any information concerning Redick's citizenship, nor was any such information provided. Id. Moreover, Love filed her amended complaint on November 20, 2025, yet Defendants waited until December 3, 2025, to file their second notice of removal. See ECF No. 1; Amend. Compl. The fact that Defendants did not immediately file their notice of removal after Love filed her amended complaint supports Defendants' claim that they did not learn of Redick's citizenship until some time between November 20, 2025, and December 3, 2025. This timing, however, does not support a finding that Defendants knew of Redick's identity and her intent to move to North Carolina at some point prior to August 20, 2025. As such, after considering Love's arguments and exhibits, the court finds that Love has failed to establish that Defendants intentionally engaged in dilatory tactics to "manufacture the jurisdictional facts underlying their notice of removal." See ECF No. 8 at 10 (cleaned up).

**B. Jurisdiction**

The court now turns to assess its jurisdiction. In her reply brief, Love states that she "does not dispute that Defendants removed this case within thirty days of Plaintiff's amended pleading, nor does [she] dispute that diversity existed at the moment of the second removal." ECF No. 10 at 1. Despite this concession, Love challenged the court's jurisdiction at the motion hearing. See ECF No. 16. Specifically, she argued that

Defendants have not provided the court with sufficient evidence to conclude that she is now a citizen of North Carolina. See id. The court considers the argument because jurisdiction can be challenged at any time. See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 390 (4th Cir. 2004).

Two documents in the record satisfy the court of its authority to hear this case. First, Love provided the court with documents recorded with the Charleston County Register of Deeds indicating that Redick sold her Mount Pleasant residence on August 18, 2025. ECF No. 8-11. Second, Love also provided the court with a North Carolina general warranty deed indicating that Redick received title to property in Charlotte, North Carolina two days later. ECF No. 8-12. Courts assessing parties' citizenship for jurisdictional purposes frequently rely on affidavits to determine citizenship,[5] and the documents submitted by Love provide a stronger basis for determining citizenship than affidavits. Love alleges that she is a citizen of South Carolina and does she dispute that Costco is a citizen of the state of Washington. ECF Nos. 1 ¶ 4, 8. As such, the court finds that the parties are completely diverse and that jurisdiction is proper pursuant 28 U.S.C. § 1332(a).[6] See Navy Fed. Credit Union v. LTD Fin. Servs., LP, 972 F.3d 344, 353 (4th Cir. 2020) (Because "no plaintiff may share a citizenship with any defendant[,]"

[5] See Lu v. Ariabin, 334 F. Appx. 594, 594–95 (4th Cir. 2009) (affirming district court's denial of motion for jurisdictional discovery when "deciding factual issue of Defendant's citizenship on the parties' declarations."); Fernandez v. Groundworks Operations, LLC, 2023 WL 1110942, at *3 (D.S.C. Jan. 30, 2023) (dismissing suit for lack of subject-matter jurisdiction on the basis of affidavit indicating that several of LLC's members were non-diverse parties).

[6] As noted in Defendants' notice of removal, Love seeks damages "in an amount to exceed One Hundred Thousand . . . Dollars," and thus, the amount in controversy exceeds $75,000 as required under Section 1332(a). See ECF No. 1 ¶ 7; Amend. Compl. at 5; 28 U.S.C. § 1332(a).

a district court "must determine and compare the citizenship(s) of all plaintiffs and all defendants before exercising diversity jurisdiction under [Section] 1332(a)."); Heniford v. Am. Motors Sales Corp., 471 F. Supp. 328, 334 (D.S.C. 1979) ("[D]iversity is tested only at the time of removal if such removal is premised on the plaintiff's voluntarily dropping [a] nondiverse defendant, although diversity did not exist among the parties at the commencement of the state court action."). It is of no significance to the court that these documents were submitted by Love, as opposed to Defendants, because Love did not challenge the court's jurisdiction in her initial motion or reply brief. See ECF Nos. 8, 10 at 1 ("[N]or does Plaintiff dispute that diversity existed at the moment of the second removal."). Defendants thus had no reason to submit any evidence confirming Redick's citizenship absent a jurisdictional challenge.

**C. Waiver**

The court will now assess Love's contention that Defendants waived their right to remove this case. Love cites to Federal Rule of Civil Procedure 1 to argue that Defendants' allegedly "intentional delays" "defy the very purpose underlying the Federal Rules of Civil Procedure[.]" ECF No. 8 at 11; see also Fed. R. Civ. P. 1 (providing that the Rules should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action"). Love further contends that Defendants manifested a clear and unequivocal intent to remain in state court "by withholding their responses for such an extended period of time[ ] while under the jurisdiction of the State court of South Carolina[.]" ECF No. 8 at 11–12. Love does not point to any further conduct on Defendants' part that is indicative of their intent to remain in state court. See id.; ECF No. 10. Love does, ad nauseam, make various blunt

assertions regarding her view of Defendants' conduct. Id. at 12 (stating that the second notice of removal is a product of "Defendants' blatant gamesmanship[,]"); id. ("Defendants' intentional delays have hindered Plaintiff's ability to meaningfully move forward with her case[,]"); id. (accusing Defendants of "creat[ing] the necessary facts" to obtain removal through "their intentional omissions[,]"); id. (stating that Defendants have "manipulated jurisdictional facts . . . to override the right of the Plaintiff and the spirit of the Court[.]").

In opposition, Defendants deny Love's allegations of procedural maneuvering and characterize her theory of waiver as "incorrect[ ]" and "conclusory[.]" ECF No. 9 at 7. To support their claim that they have only litigated in good faith, Defendants note that they previously, "without hesitation, . . . extended the courtesy of an extension of deadlines to the Plaintiff that allowed the Plaintiff to file a Motion to Remand and an Opposition to previously filed Motions to Dismiss" in the prior action. Id. at 9 n.4.

By way of substantive argument, Defendants first assert that Rule 1 of the Federal Rules of Civil Procedure does not provide any basis for the court disregard federal law governing subject-matter jurisdiction and the removal of cases from state court. Id. at 9. Defendants also observe that in Northrup Grumman the Fourth Circuit affirmed a finding of waiver when the defendant had litigated for six months in state court, waited to file its notice of removal until shortly before trial, and filed it the night before a hearing in state court on the plaintiff's motion for sanctions. 865 F.3d at 187; see ECF No. 9 at 9. Defendants argue that, in contrast, they only took limited defensive actions in state court, including "[r]outine scheduling, consensual extensions, [and] discovery-format exchanges" and only did so while the case was not removable—i.e., prior to Love filing

her amended complaint naming Redick as a defendant. ECF No. 9 at 9. Upon learning of Fread's dismissal and Redick's addition to the suit, Defendants assert that they "promptly removed this action to federal court." Id.

In reply, Love aptly summarizes Defendants' argument to be "that waiver can arise only where a defendant seeks merits adjudication in state court after a case becomes removable." ECF No. 10 at 3. Love states that she does not dispute this is one factual scenario supporting waiver. Id. Her argument, she asserts, "is different[,]" because she "contends that Defendants waived removal [sic] by allegedly manufacturing the jurisdictional facts upon which the second removal depends—through non-disclosure of the store manager's identity during the period she was a South Carolina resident despite Plaintiff's requests and stated intent to amend." Id. Finally, Love argues that Defendants' opposition does not meaningfully address whether such conduct, if credited, fits with the 'extreme situations' described in Northrop Grumman." Id. (emphasis added).

As indicated above, the court does not credit Love's assertion that Defendants' intentionally withheld Love's identity while knowing she intended to move to North Carolina at any point prior to August 20, 2025. See supra pp. 4–9. Because the court does not credit this accusation, the court need not determine whether such actions would constitute a novel, yet "extreme situation[ ]" in which "judicial economy, fairness, and comity demand" a finding of waiver. See Northrop Grumman Techn. Servs. Inc., 865 F.3d at 186.

Despite the bold accusations in Love's briefing on the instant motion, she adopted a softer position at the motion hearing, arguing that waiver was justified because

Defendants failed to identify Redick despite Love having requested that Defendants identify the proper store manager. See ECF Nos. 8, 10, 16. The court certainly acknowledges that defense counsel should have provided some form of response to Love's counsel when he requested the identity of the proper store manager by email on February 6, 2025. But, because the court finds that any delay in providing Redick's identity was not an intentional act of jurisdictional manipulation, defense counsel's oversight does not constitute an "extreme situation[ ]" that demands a finding of waiver. See Northrop Grumman Techn. Servs. Inc., 865 F.3d at 186.

Having dispensed with these arguments, a finding of waiver will only be warranted if, "after the case became removable," Defendants demonstrated an "unequivocal intent to remain in state court" by taking "substantial defensive action." See Northrop Grumman, 865 F.3d at 186 (cleaned up). This suit first became removable on November 20, 2025, when Love filed her amended complaint, see Amend. Compl., and Defendants filed the second notice of removal on December 4, 2025, see ECF No. 1. Between these two dates, Love points to no substantial defensive action taken by Defendants that is indicative of a "clear and unequivocal intent to remain in state court." See Northrop Grumman, 865 F.3d at 186. As such, the court finds that this is not an "extreme situation[ ]" that justifies a finding that Defendants waived their right to remove this case. See id.; see also Redman, 2022 WL 17716772, at *2 (Waiver determination "involves a factual and objective inquiry as to the defendant's intent to waive."). Accordingly, the court will deny the motion to remand.[7]

[7] Because the court denies the motion to remand, the court also denies Love's request for attorneys' fees. See 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs") (emphasis added); see also Martin v. Franklin Cap. Corp.,

## IV. CONCLUSION

For the foregoing reasons, the court **DENIES** the motion to remand.

**AND IT IS SO ORDERED.**



**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 25, 2026**
**Charleston, South Carolina**

546 U.S. 132, 136 (2005) ("[A]bsent unusual circumstances, attorneys' fees should not be awarded when the removing party has objectively reasonable basis for removal.").